J-A03028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT ARTHUR SNYDER, JR. | |
| Appellee | No. 485 MDA 2016 |

Appeal from the Order Entered March 21, 2016
In the Court of Common Pleas of Northumberland County
Criminal Division at No: CP-49-CR-0000286-2015

BEFORE:  LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 02, 2017**

The Commonwealth of Pennsylvania appeals from the March 21, 2016 order entered in the Court of Common Pleas of Northumberland County ("suppression court") granting Appellee's, Robert Arthur Snyder, Jr., omnibus motion to suppress.  Upon review, we affirm in part, reverse in part, and remand for further proceedings.

Following an alleged domestic violence incident on February 4, 2015, Appellee was arrested and brought into police custody.  Prior to being charged, Appellee was placed in an interrogation room and questioned by officers.  Appellee's time in the interrogation room was captured on video.[1]  During that time he was interrogated and was placed in an interrogation

_____

[1] The recordings were introduced into evidence as Commonwealth Ex. 2 and Commonwealth Ex. 3 at the suppression hearing on September 21, 2015.

room by himself. The Commonwealth eventually charged Appellee with criminal attempt homicide, two counts of aggravated assault, terroristic threats, recklessly endangering another person, and simple assault.[2] On August 7, 2015, Appellee filed an omnibus pre-trial motion, which included a motion to suppress.

On September 21, 2015, the suppression court held a hearing on Appellee's omnibus pre-trial motion. After the hearing, the suppression court ordered the parties to file post-hearing briefs. On March 21, 2016, the suppression court made the following findings of fact.

1. While in custody on or about February 4, 2015, [Appellee] made statements, both to the police and while himself alone in the interrogation room, which could be interpreted as being interlocutory and/or against his interest.

2. [Appellee] was in custody.

3. [Appellee] was handcuffed.

4. [Appellee] was advised of his **Miranda**[3] warnings and the right to waive those warnings.

5. [Appellee] understood his rights and the right to waive them.

6. [Appellee] indicated affirmatively that he was not waiving his rights.

_____

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2702(a)(4), 2706(a)(1), 2705, and 2701(a)(1), respectively.

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

7. [Appellee] was advised as to the subject of the investigation, being a domestic incident involving a gun. He understood why he was in custody.

8. [Appellee] requested a minimum of twenty (20) times to speak to an attorney and, in some cases, his particular attorney.

9. In the first eighteen (18) minutes of the custodial interrogation, he invoked his right to an attorney nine (9) times.

10. Before being advised of his **Miranda** rights, [Appellee] requested that his attorney be called. He asked the police to please call his attorney, and he specified his attorney by name.

11. The Troopers engaged in both questioning and conduct reasonably intended to illicit responses from [Appellee], this constitutes interrogation.

12. The questions asked of [Appellee] were directly related to the underlying alleged criminal incident.

13. There was no break in the custodial interrogation, [Appellee] remained in custody of the Troopers during the entirety of the interrogation.

14. [Appellee], upon being questioned about his wishes, indicated he did not believe speaking to the police would be in his best interest.

Order, 3/21/2016, at 1-2. The suppression court granted Appellee's motion to suppress the video recordings and all statements made by Appellee during his time in custody. *Id.* at 4.

The Commonwealth filed a timely notice of appeal on March 23, 2016, certifying that the March 21, 2016 order substantially handicapped the prosecution. On April 5, 2016, the suppression court issued an order directing the Commonwealth to file a concise statement. On May 6, 2016,

the Commonwealth filed a motion for leave to file a Pa.R.A.P. 1925(b) statement *nunc pro tunc*. On May 16, 2016, the Commonwealth's motion was granted and the Commonwealth filed a Rule 1925(b) statement on May 17, 2016. The suppression court did not issue a Pa.R.A.P. 1925(a) opinion, noting that the March 21, 2016 order sufficiently addressed the issues raised on appeal.

The Commonwealth raises two issues on appeal, which we quote verbatim.

I. Whether the [suppression court] erred in suppressing any and all of [Appellee's] statements after his first request to call his attorney, where [Appellee] was not formally charged, was not being questioned, and which was prior to the police advising [Appellee] of his **Miranda** warnings.

II. Whether the [suppression court] erred in suppressing the video recording of [Appellee] on February 4th and 5th of 2015 and finding that police interrogated [Appellee] where [Appellee] was not asked questions, but blurted out incriminating statements while alone in a room.

Appellant's Brief at 4.

The Commonwealth is appealing an interlocutory order as of right pursuant to Pa.R.A.P. 311(d) which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). "Our Supreme Court has consistently held that [Rule 311(d)] applies to pretrial rulings that

result in the suppression, preclusion or exclusion of evidence." *Commonwealth v. Andre*, 17 A.3d 951, 956 (Pa. Super. 2011) (citations omitted). In the matter *sub judice*, the Commonwealth is appealing an order granting a motion to suppress and the Commonwealth provided that the order will substantially handicap the prosecution; therefore, the Commonwealth is entitled to an interlocutory appeal as of right.

Our standard of review of a Commonwealth appeal from a suppression order is well established. We

> consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Nester*, 709 A.2d 879, 880-81 (Pa. 1998) (citations omitted). The Commonwealth's claims are significantly intertwined and as such we will address them as one.

The Commonwealth first argues that the suppression court erred by suppressing statements made after Appellee requested counsel but prior to being read his *Miranda* rights. The Commonwealth further argues that the suppression court erred by suppressing statements made after Appellee was advised of his *Miranda* rights because he was not formally charged and was not being questioned. This argument is troubling. The Commonwealth is arguing that it arrested Appellee, handcuffed him, and placed him in an

interrogation room with a trooper who was asking questions, and this conduct does not constitute custodial interrogation pursuant to *Miranda*. One such example of the line of questioning Appellee faced was when a Trooper stated

> I have one side of the situation. I got one side from your wife. I spoke to your wife, I sat down with her. I talked to her about it. I don't know your side of it yet so this is your opportunity to give me that. If you want to talk to me, you can talk to me, again you can stop answering questions anytime you wish, I cannot force you to continue.

N.T. Suppression Hearing, 9/21/15, at Commonwealth Ex. 3 ("Comm. Ex. 3"). The Commonwealth argues that Appellee's Sixth Amendment rights were not violated when he was interrogated. This statement is correct because Appellee's Fifth Amendment rights were violated. In order for *Miranda* rights to be implicated, an individual must be subject to custodial interrogation. *Commonwealth v. Freeman*, 128 A.3d 1231, 1240 (Pa. Super. 2015). There is no question that Appellee was in custody when he was arrested, in handcuffs, and placed in the interrogation room.

The Commonwealth, however, argues that there was no interrogation. Interrogation is defined as "police conduct calculated to, expected to, or likely to evoke admission." *Commonwealth v. Umstead*, 916 A.2d 1146, 1152 (Pa. Super. 2007) (citations omitted).

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions

of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980) (footnotes omitted).

The Commonwealth argues that because Appellee anticipatorily invoked his right to an attorney, the Fifth Amendment does not apply. "The Fifth Amendment right to counsel cannot be invoked anticipatorily **outside** of the context of custodial interrogation." *Commonwealth v. Sherwood*, 982 A.2d 483, 500 (Pa. 2009) (emphasis added) (quoting *Commonwealth v. Romine*, 682 A.2d 1296 (Pa. Super. 1996)). Thus, the Commonwealth's argument fails because Appellee was subject to custodial interrogation when he first requested an attorney. The Commonwealth's argument taken t

o its logical conclusion suggests that as long as the police do not inform an individual in custody of their *Miranda* rights, the rights do not exist, and the individual can be interrogated freely.

Further, the Trooper's statement

I have one side of the situation. I got one side from your wife. I spoke to your wife, I sat down with her. I talked to her about it. I don't know your side of it yet so this is your opportunity to give me that. If you want to talk to me, you can talk to me, again you can stop answering questions anytime you wish, I cannot force you to continue.

which occurred after Appellee requested counsel, is a clear attempt to elicit a response from Appellee. **See** Comm. Ex. 3. Moreover, the Commonwealth argues that Appellee's statement "I did not pull the trigger" was self-serving and therefore should not be suppressed pursuant to **Miranda**. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." **Innis**, 445 U.S. at 297 (quoting **Miranda**, 384 U.S. at 444). The Commonwealth's argument fails.

Upon review of the record, Appellee clearly requested an attorney immediately upon being placed in the interrogation room. **See** Comm. Ex. 3. Moreover, after being read his **Miranda** rights, he again indicated that he wanted an attorney. During the first interview, the Trooper repeatedly made statements intended to evoke an admission from Appellee. **Id.** As Appellee was in custody and was subject to interrogation after he clearly requested counsel, Appellee's **Miranda** rights were violated and all statements made *as a result* of the questioning by the Troopers were correctly suppressed. However, the suppression court's blanket suppression of the video recordings and all statements made by Appellee went too far.

The Commonwealth's next argument is that the trial court erred in suppressing the second video recording of Appellee wherein he made statements alone in a room without being questioned. As discussed above, custodial interrogation has two components, custody and interrogation.

- 8 -

When Appellee was sitting alone in the interrogation room, he was not subject to interrogation. For example, Appellee says "I'm going to fucking kill you. She's fucking dead" at 1:01:45 of the second video while he is alone in the interrogation room. **See** N.T. Suppression Hearing, 9/21/15, at Commonwealth Ex. 2 ("Comm. Ex. 2"). Therefore, any statements made by Appellee during that time do not implicate **Miranda** and should not have been suppressed. **See Commonwealth v. Scarborough**, 421 A.2d 147, 153 (Pa. 1980) (It is "well-established that a statement which is spontaneously volunteered is admissible notwithstanding a prior assertion of constitutional rights.") (citations omitted). Further, we note there are multiple instances where Appellee was not alone in the interrogation room during the second video and was making statements to troopers. Appellee initiated some of these conversations with the troopers. The statements made by Appellee that were not the result of an interrogation should not have been suppressed. The trial court is directed to evaluate the individual statements made by Appellee and whether they were the result of interrogation by the troopers.

At numerous times during this second video, Appellee initiates conversation with the troopers. **See** Comm. 2. For example, at approximately 1:38 of the second interview, Appellee makes an admission not subject to interrogation. **Id.** Appellee stated that "I'm not guilty, I didn't try to do anything other than try to fucking kill myself. My wife grabbed the gun and the gun went off." **Id.** The trooper responded "I didn't

ask you that." *Id.* Appellee responded "I didn't ask you to ask me that, I just told you that." *Id.* The suppression court's blanket suppression of both videos and all statements made by Appellee is overbroad as there are multiple admissions, such as his statement "I'm going to fucking kill you. She's fucking dead" that do not violate Appellee's *Miranda* rights.

Therefore, we reverse the order of the trial court regarding the second video and remand for further proceedings to determine which statements of Appellee in the second video were the result of police interrogation and which were spontaneously made by Appellee. The trial court is to suppress those statements that were the result of police interrogation and permit introduction into evidence those statements that Appellee made spontaneously.

Order affirmed in part, reversed in part, remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2017